UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF THE APPLICATION OF
GALINA WEBER,

          Petitioner,

vs.                                    Case No.  3:07-mc-27-J-32MCR

FOR DISCOVERY FROM LAZAR S. FINKER,
an individual, RAISSA M. FRENKEL, an
individual, STEVEN CHARLES KOEGLER, an
individual, WILLIAM E. CHATTIN, an
individual, THEODOROS J. KAVALIEROS, an
individual, AFRODITI KAVALIEROS, an
individual, and IGOR V. MAKAROV, an
individual,

          Respondents.

_____/

## REPORT AND RECOMMENDATION[1]

    **THIS CAUSE** is before the Court on Petitioner's Amended Petition for Discovery in Aid of Foreign Proceedings (Doc. 37).[2] On August 2, 2007, Judge Morris recused himself from this case (Doc. 29) and on October 3, 2007, the undersigned conducted a hearing regarding the Petition for Discovery.

---

    [1] Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

    [2] On October 3, 2007, the Court denied Respondents' Motion to Strike (Doc. 9) portions of the original Petition as moot as Petitioner agreed to file an Amended Petition without the objectionable  portions and exhibits.

# I.  BACKGROUND

On April 27, 2007, Petitioner filed a Petition for Discovery in Aid of Foreign Proceedings pursuant to 28 U.S.C. §1742(a).  (Doc. 1).  Petitioner, Galina Weber, is a citizen of Switzerland and a resident of Monaco.  She is a shareholder of Itera Group, Ltd., a Cypriot corporation.  Intera Group is a large company with many subsidiaries throughout the world.  The Respondents are also shareholders of Itera Group and all except for Igor Makarov ("Makarov"), reside in Jacksonville, Florida.  Makarov is the CEO of Itera Group and resides in Moscow, Russia.[3]  Petitioner seeks discovery to assist her in two pending cases in foreign countries: a civil case in Cyprus and a criminal case against her in Switzerland.

## A.  The Cyprus case:

This civil lawsuit was filed by Petitioner against Itera Group, Makarov and Sweet Water Intervest Corporation (a British Virgin Islands corporation that Petitioner claims is associated with Makarov).  The case claims that Makarov offered to buy Petitioner's 14% interest in Itera Group but failed to complete the transaction believing he could get her to sell the shares for less money.  (Doc. 37, pp. 5-6).  When Petitioner refused the subsequent offers, Itera Group's Board of Directors voted to increase the number of authorized shares in Itera Group by six million shares, thereby diluting Petitioner's entire ownership interest from 14% to 4%.  (Doc. 37, p.7).  Petitioner claims that the other

---

[3]   During the October 3, 2007 hearing, counsel for Respondents indicated that any responsive documents for Makarov would be located in either Moscow, Russia or Lemassol, Cyprus.  Based on this representation, counsel for Petitioner agreed to dismiss Makarov without prejudice from  the Petition.  Accordingly, the Court will not address the parties' arguments regarding whether the Court has jurisdiction over Mr. Makarov.

shareholders were able to acquire additional shares because they received money from Itera Group or an affiliated company that Petitioner did not.  (Doc. 37, p.7; Ex. A, p.3)

**B.  The Swiss case**:

In the Fall of 2006, criminal charges were filed against Petitioner in Switzerland for allegedly embezzling Itera Group assets.  The criminal charges were filed by Gas Itera, an Intera Group subsidiary, which claimed Petitioner, her husband and brother-in-law purchased real property belonging to Itera Group by offsetting the purchase price against a nonexistent debt Itera Group owed Petitioner.  (Doc. 10, pp. 6-7).  Petitioner's defense is that Itera Group owed her $4.8 million in unpaid dividends.  Under Swiss law, offsetting a debt in such a situation is a complete defense to embezzlement.

Specifically, Petitioner claims that in January 2005, the Itera Group Board of Directors approved payment of dividends to its shareholders in the amount of $80 million to be dispersed in two tranches of $40 million each.  (Doc. 37, p.5).  In March 2005, the first payment (or tranche) was made and all shareholders, including Petitioner, received a proportionate share of the dividend based on his/her ownership interest.  Id.  The distribution of the second tranche did not go as smoothly.  According to Petitioner, the Itera Group Board of Directors approved the distribution of the second tranche at the May 28, 2005 meeting.  (Doc. 37, p.6).  However, Petitioner did not receive her full portion of the second tranche.  She received an amount equal to 2.5% ownership in Itera Group rather than the 14.5% ownership she claims she had.  Id.  The unpaid 12% would have been equal to $4.8 million.  (Doc. 37, p.7).  Petitioner claims the Florida Shareholders (the Respondents), on the other hand, received the full amount of their second tranche.  She claims they devised a scheme to avoid taxes on

-3-

the second tranche whereby Itera Group paid these shareholders their share of the

second tranche through a shell company in the form of a loan, rather than as a dividend,

which would be taxable.  (Doc. 37, p.6).

Petitioner now seeks to obtain discovery from the Respondents for use in both

the Switzerland criminal case and the Cypress civil action pursuant to 28 U.S.C.

§1782(a), which permits a district court in which a person resides or may be found to

order that person to produce documents for use in a proceeding in a foreign country.

Respondents object to the discovery on numerous grounds.

## II.  ANALYSIS

Because this request for discovery involves two separate cases, the Court will

analyze each case individually to determine whether to permit the discovery for either or

both cases.

### A.    The Swiss case

With respect to the Swiss case, Respondents take the position that Petitioner's

request for discovery should be denied because the request for information is governed

not by §1782(a), but rather by the United States - Swiss Mutual Assistance Treaty (the

"Swiss Treaty").  Additionally, Respondents argue that if the discovery for the Swiss

case is appropriate pursuant to §1782(a), the Court should recognize that the Swiss

case is a criminal proceeding and apply the Federal Rules of Criminal Procedure rather

than the Federal Rules of Civil Procedure.  The Court will examine these arguments and

determine whether to permit discovery for use in the Swiss case.

### 1.    **Whether the Swiss Treaty Controls**

The Court will first determine whether 28 U.S.C. §1782(a) applies as Petitioner urges or whether the request for discovery is governed by the Swiss Treaty as Respondents contend.  Respondents argue the Swiss Treaty takes precedence over §1782(a) because it was enacted after the last amendment of §1782(a).  (Doc. 10, p.13).  Petitioner responds that the Swiss Treaty and §1782(a) are not inconsistent and therefore, the Swiss Treaty does not preempt §1782(a).  (Doc. 16, p.7).  Moreover, Petitioner argues that even using Respondents' logic, the Treaty would not trump §1782(a) because §1782(a) was amended after the enactment of the Treaty in 1996. (Doc. 16, p.8).

The Court agrees with Petitioner that in this case, §1782(a) would apply.  As both sides correctly note, the Swiss Treaty takes precedence over an **inconsistent** law. However, Respondents have pointed to no inconsistencies between §1782(a) and the Swiss Treaty.  Indeed, "[t]he court must read [1782(a)] as consistent with the [Swiss] Treaty if at all possible."   In re Request From Swiss Federal Dept. of Justice and Police, 731 F. Supp. 490, 491 (S.D. Fla.1990) (citing United States v. Lee Yen Tai, 185 U.S. 213, 221-22, 22 S.Ct. 629 (1902) and United States v. Vetco, Inc., 691 F.2d 1281, 1286 (9th Cir. 1981)).  Accordingly, the Court finds the Swiss Treaty does not preempt §1782 in this case.  Therefore, Petitioner is not required to seek the documents pursuant to the Swiss Treaty but may avail herself of §1782(a).

**2.**     **Whether Petitioner Satisfies the Requirements of 28 U.S.C. § 1782(a)**

Having determined it was proper for Petitioner to seek the documents pursuant to

§1782(a), the Court must now determine whether Petitioner satisfies the requirements

of §1782(a) with respect to the Swiss case.  28 U.S.C. §1782(a) provides in relevant

part:

> The district court of the district in which a person resides or
> is found may order him to give his testimony or statement or
> to produce a document or other thing for use in a proceeding
> in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation. The
> order may be made pursuant to a letter rogatory issued, or
> request made, by a foreign or international tribunal or upon
> the application of any interested person and may direct that
> the testimony or statement be given, or the document or
> other thing be produced, before a person appointed by the
> court. . . . The order may prescribe the practice and
> procedure, which may be in whole or part the practice and
> procedure of the foreign country or the international tribunal,
> for taking the testimony or statement or producing the
> document or other thing.  To the extent that the order does
> not prescribe otherwise, the testimony or statement shall be
> taken, and the document or other thing produced, in
> accordance with the Federal Rules of Civil Procedure.

Plaintiff argues she is entitled to the documents from Respondents because she

satisfies all the statutory requirements under §1782(a).  There are four statutory

requirements which must be satisfied in order to obtain discovery pursuant to §1782(a):

(1) the request must be made by an "interested person," (2) the request must seek

evidence, such as the production of "a document or other thing," (3) the evidence must

be "for use in a proceeding in a foreign or international tribunal," and (4) the person from

whom discovery is sought must reside or be found in the district of the district court

ruling on the application for assistance.  In re Clerici, 481 F.3d 1324, 1331-32 (11th Cir.

2007).  Petitioner claims she satisfies each of these requirements.  Petitioner is an interested person as she is one of the defendants in the Swiss case.  Additionally, Petitioner seeks the production of documents which will aid her defense in the Swiss case and the persons from whom she seeks the documents reside or may be found in Jacksonville.

Respondents do not take issue with the first two requirements, that Petitioner is an interested person and that she is seeking evidence.  Furthermore, as Petitioner dropped Makarov from the Petition, there is no longer any dispute regarding the final requirement: that the remaining Respondents reside in the Middle District of Florida.  Instead, Respondents take the position that Petitioner does not need the documents for her Swiss case because Petitioner and her co-defendants have claimed to be in possession of documents supporting the sale of Itera Group property and the second tranche.  (Doc. 10, p.7).  Respondents argue that if Petitioner and her co-defendants would produce these documents, the Swiss criminal charges against them would be dropped.  Id.  During the October 3, 2007 hearing, counsel for Petitioner denied that his client had any such documents and assured the Court that if she did, she would not be seeking the documents from Respondents.  The Court does not find Respondents' assertions that Petitioner already has all the documents she needs for the Swiss case to be sufficient to foreclose the requested discovery.

Accordingly, Petitioner satisfies the requirements of §1782(a).  Even though the Court may find the statutory requirements of §1782(a) have been satisfied, the Court is not required to allow the discovery.  Instead, the Court is required to consider several

factors and exercise its discretion as to whether to permit the discovery.  In re Clerici, 481 F.3d at 1334 (citing,  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264, 124 S.Ct. 2466, 2482-83 (2004)).  In the Intel case, the Supreme Court discussed several "factors that bear consideration" by a district court "in ruling on a §1782(a) request."  Intel, 542 U.S. at 263, 124 S.Ct. at 2483.  These factors are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

In re Clerici, 481 F.3d at 1334 (quoting,  Intel, 542 U.S. at 264-65, 124 S.Ct. at 2483).

Respondents argue that all but the first factor weigh against permitting the discovery. With respect to the second factor, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," Respondents have submitted an affidavit from the attorney representing Gas Itera in the Swiss matter, Christof Muller.  (Doc. 22).  Mr. Muller states:

> I have a good faith, legally sustainable opinion, that the honorable Swiss Judge, Mrs. Tatjana Heller, in her function as Investigative Magistrate will rule any documents disclosed as a result of this US-Discovery to be inadmissible in the Swiss criminal-case.

(Doc. 22, p. 12).  Mr. Muller based this statement on his understanding of the Swiss

Treaty.  Id.  In response to this affidavit, Petitioner filed an affidavit from Petitioner's

attorney in the Swiss case, Dr. Stephan Thurnherr.  (Doc. 23).  Dr. Thurnherr stated that

he spoke with the Investigative Magistrate who:

> firmly confirmed that she would review and consider any
> evidence produced from the Respondents in this American
> proceeding, as such evidence is clearly prescribed by art. 29
> par. 2 of the Swiss Constitution (Bundesverfassung) and the
> St. Gallen Rules of Criminal Procedure . . .

(Doc. 23, p.9).  Dr. Thurnherr also stated that the Magistrate "reiterated that it

remain[ed] her discretion what weight to give the documents produced by the

Respondents; however, she clearly would review and consider them."  Id.  The Court is

presented with conflicting affidavits and does not intend to "try to glean the accepted

practices and attitudes of other nations from . . .  conflicting and, perhaps, biased

interpretations of foreign law."  Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099

(2nd Cir. 1995).  Instead, the Court's inquiry into the foreign tribunal's attitudes toward

discovery from the United States should be based only on "authoritative proof that a

foreign tribunal would reject evidence obtained with the aid of section 1782."  Id. at

1100.  In the instant case, there is no such "authoritative proof" that the Swiss

Magistrate would be unreceptive to any relevant evidence uncovered through the

discovery here.  Accordingly, the Court finds there is no reason for the second factor to

weigh against permitting the discovery.

As for the third factor, "whether the §1782(a) request conceals an attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country or

the United States," Respondents argue that Petitioner's failure to attempt to obtain any documents through the Swiss discovery process indicates Petitioner may be attempting to circumvent Swiss proof-gathering restrictions or other policies.  However, as Petitioner points out, she is not required to exhaust all Swiss discovery avenues before seeking discovery through §1782(a).  Euromepa, 51 F.3d at 1098 (noting that there is no "quasi-exhaustion requirement" in §1782 "that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court.") (quoting, In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2nd Cir. 1992), cert. denied, 506 U.S. 861, 113 S.Ct. 179 (1992)).  In Euromepa, the court reversed a district court's denial of a §1782 petition partly on the grounds that the petitioner failed to attempt to obtain documents through French mechanisms before applying to the U.S. court.  Euromepa, 51 F.3d at 1098.  The district court recognized that there was no exhaustion requirement in §1782 but still considered the failure to attempt to obtain the documents in France as bearing on whether the French court would be receptive to the documents.  Id.  The circuit court found this inappropriate. Likewise, in the instant case, the Court does not believe Petitioner's failure to obtain documents using the Swiss methods indicates an attempt to circumvent Swiss proof-gathering restrictions or other policies.  Respondents do not point to any such restrictions or policies.  As such, the Court finds no reason for the third factor to weigh against permitting the discovery.

Finally, with respect to the fourth factor, whether the request is otherwise "unduly intrusive or burdensome," the Court agrees the discovery requests may be overly broad

and therefore, may need to be more narrowly tailored, however, Respondents have not convinced the Court that the requests are so unduly intrusive or burdensome to deny the discovery altogether.   Instead, the Court believes it can address the over breadth or intrusiveness of the discovery requests when it rules on Petitioner's Motion to Compel (Doc. 2).  Accordingly, the Court believes the discovery pursuant to §1782 should be permitted.  After Judge Corrigan rules on the instant Report and Recommendation, the undersigned will consider the Motion to Compel (Doc. 2) and will determine if and/or how the discovery may need to be trimmed.

### 3.    Whether the Federal Rules of Civil or Criminal Procedure Apply

Next, the Court must determine whether Petitioner's discovery requests should be governed by the Federal Rules of Civil Procedure or as Respondents argue, the Federal Rules of Criminal Procedure.  Respondents take the position that because the Swiss case is a criminal matter, any discovery sought by Petitioner pursuant to §1782(a) should be governed by the Federal Rules of Criminal Procedure, which contain limitations on pretrial discovery.  (Doc. 10, pp. 14-18).  Respondents do not cite any authority for their proposition and the Court was unable to find any cases in which the Federal Rules of Criminal Procedure were applied to a discovery request pursuant to §1782(a).  Although the Court finds Respondents' argument logical, the Court ultimately finds it to be without merit.

Indeed, in Application of Sumar, 123 F.R.D. 467, 469-70 (S.D.N.Y. 1988), the respondents asked the court to apply the Federal Rules of Criminal Procedure to petitioner's efforts to compel discovery under Section 1782 because of the criminal

nature of the foreign proceeding.  The court declined, stating, "[t]he criminal nature of

the Argentine investigation does not change the explicit direction of Section 1782 . . .

The Federal Rules of Civil Procedure will be applied to petitioner's motion to compel."

Id. (citing, In re Request for International Judicial Assistance from Brazil, 687 F.Supp.

880, 887 (S.D.N.Y. 1988) (reversed on other grounds)).  In the Brazil case, the court

determined that a subpoena for documents in a Brazilian criminal matter issued

pursuant to §1782(a) would be governed by the Federal Rules of Civil Procedure.  The

court noted that §1782 speaks "generally in terms of the district court's discretion," but

essentially gives the district court two sources to determine the procedures governing

the discovery: "the practice and procedure of the foreign country, or the Federal Rules

of Civil Procedure."  Id.  The statute says nothing about the Federal Rules of Criminal

Procedure and as this Court is unaware of the procedures of the Swiss court for

producing documents, this Court believes it is appropriate to utilize the Federal Rules of

Civil Procedure for the production of any documents.

        Moreover, the Court agrees with Petitioner's argument that as pointed out in the

Clerici case, §1782(a) "refers to the Federal Rules, not for whether the district court can

order [the respondent] to give any testimony, but only for the procedures or manner in

which that testimony is to be taken."  In re Clerici, 481 F.3d at 1336.  In this case, the

Respondents are not arguing that the Federal Rules of Criminal Procedure would

require Petitioner to follow a different sort of procedure in order to obtain the

documents.  Instead, Respondents argue that the Federal Rules of Criminal Procedure

would require the Petitioner to make a stronger showing before being able to obtain the

discovery from Respondents.  Pursuant to the <u>Clerici</u> case, this argument is without merit.

Accordingly, the undersigned believes Petitioner is entitled to serve the discovery requests upon the Respondents pursuant to §1782(a) for use in the Swiss case.

**B.** **The Cyprus Case**

With respect to the Cyprus case, now that Makarov is no longer subject to the discovery requests, Respondents' arguments against the discovery in the Cyprus case are much more limited.  Respondents argue that discovery pursuant to §1782(a) is inappropriate because Petitioner has not attempted to obtain the documents in Cyprus, thereby raising an inference that Petitioner is attempting to "circumvent foreign proof-gathering restrictions or other policies of [Cyprus]."  (Doc. 10, p.18).  Additionally, Respondents contend that the requests are overly broad and unduly burdensome. (Doc. 10, pp.18-20).

Petitioner satisfies the four statutory requirements pursuant to §1782(a), however, the Court must again review the <u>Intel</u> factors to determine whether it should exercise its discretion to permit the discovery in the Cyprus case.  As noted above, Respondents only raise issues with the third and fourth <u>Intel</u> factors.  As with the Swiss case and for the same reasons, the Court finds neither of these factors weighs against permitting the discovery.  There is not sufficient evidence to believe Petitioner is trying to circumvent any Cypriot proof-gathering restrictions or other policies.  Additionally, to the extent the discovery requests may be intrusive, burdensome or overly broad, the Court will address same in its ruling on Petitioner's Motion to Compel (Doc. 2).  As such,

the Court finds discovery pursuant to §1782(a) is appropriate for the Cyprus case as

well.

     Accordingly, and  after due consideration, it is

     **RECOMMENDED**:

     The Amended Petition for Discovery in Aid of Foreign Proceedings (Doc. 37) be

**GRANTED**.


     **DONE AND ENTERED** in Chambers in Jacksonville, Florida this  _11th_  day of

October, 2007.


*Monte C. Richardson*
                 MONTE C. RICHARDSON
          UNITED STATES MAGISTRATE JUDGE

Copies to:

Timothy J. Corrigan,
   United States District Judge,

Counsel of Record