UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF THE APPLICATION OF
GALINA WEBER,

       Petitioner,

vs.                                 Case No.  3:07-mc-27-J-32MCR

FOR DISCOVERY FROM LAZAR S. FINKER,
an individual, RAISSA M. FRENKEL, an
individual, STEVEN CHARLES KOEGLER, an
individual, WILLIAM E. CHATTIN, an
individual, THEODOROS J. KAVALIEROS, an
individual, AFRODITI KAVALIEROS, an
individual, and IGOR V. MAKAROV, an
individual,

       Respondents.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Petitioner's Motion to Compel Discovery

(Doc. 2) filed May 21, 2007.  Respondents filed a response in opposition on June 12,

2007.[1]  (Doc. 12).  On June 22, 2007, Petitioner filed a Reply (Doc. 17).  Prior to ruling

on the instant Motion to Compel, the Court first needed to determine whether to permit

Plaintiff to obtain the requested discovery and grant Plaintiff's Petition for Discovery in

Aid of Foreign Proceedings pursuant to 28 U.S.C. §1742(a).  (Doc. 1).  On October 11,

2007, the undersigned entered a Report and Recommendation to the District Judge

recommending the Petition be granted.  (Doc. 38).  On November 30, 2007, Judge

---

[1]  Actually, Respondents filed their original response on June 11, 2007 (Doc. 11) and then
filed a Corrected and Amended Opposition to Motion to Compel (Doc. 12) on June 12, 2007.

Corrigan adopted the Report and Recommendation (Doc. 43).  The Court then directed

the parties to file supplemental briefs regarding their positions on the Motion to Compel

(Doc. 44).  The parties did so (see Docs. 45 and 46) and accordingly, the Motion to

Compel was ripe for judicial review.  However, on December 31, 2007, Respondents

filed a Notice of Appeal (Doc. 47).  Thereafter, the undersigned asked the parties to file

memoranda regarding their positions on whether the Court should stay its decision on

the pending Motion to Compel.  (Doc. 48).  The parties pointed out that the Eleventh

Circuit directed them to file briefs on the issue of whether the Order permitting discovery

pursuant to 28 U.S.C. §1742(a) is a final appealable order.  Accordingly, the

undersigned elected to wait for the Eleventh Circuit to rule on that issue.  On April 8,

2008, the Eleventh Circuit determined the Order permitting discovery pursuant to 28

U.S.C. §1742(a) was not a final appealable order and dismissed Respondents' appeal.

As such, the undersigned will now proceed to rule on the pending Motion to Compel.

## I. BACKGROUND

As noted above, on April 27, 2007, Petitioner filed a Petition for Discovery in Aid

of Foreign Proceedings pursuant to 28 U.S.C. §1742(a).  (Doc. 1).  Petitioner, Galina

Weber, is a citizen of Switzerland and a resident of Monaco.  She is a shareholder of

Itera Group, Ltd., a Cypriot corporation.  Itera Group is a large company with many

subsidiaries throughout the world.  The Respondents[2] are also shareholders of Itera

Group and all reside in Jacksonville, Florida.  Petitioner seeks discovery to assist her in

---

[2]  During the October 3, 2007 hearing, counsel for Petitioner agreed to dismiss Igor
Makarov, the CEO of Itera Group, without prejudice from  the Petition.

two pending cases in foreign countries: a civil case in Cyprus and a criminal case against her in Switzerland.

**A.  The Cyprus case**:

This civil lawsuit was filed by Petitioner against Itera Group, Igor Makarov ("Makarov") and Sweet Water Intervest Corporation (a British Virgin Islands corporation that Petitioner claims is associated with Makarov).  The case claims that Makarov offered to buy 12% of Petitioner's 14.5% interest in Itera Group but failed to complete the transaction believing he could get her to sell the shares for less money.  (Doc. 37, pp. 5-6).  When Petitioner refused the subsequent offers, Itera Group's Board of Directors voted to increase the number of authorized shares in Itera Group by six million shares, thereby diluting Petitioner's entire ownership interest from 14.5% to 4.86%.  (Doc. 37, p.7).  Petitioner claims that the other shareholders were able to acquire additional shares because they received money from Itera Group or an affiliated company that Petitioner did not.  (Doc. 37, p.7; Ex. A, p.3)

**B.  The Swiss case**:

In the Fall of 2006, criminal charges were filed against Petitioner in Switzerland for allegedly embezzling Itera Group assets.  The criminal charges were filed by Gas Itera, an Itera Group subsidiary, which claimed Petitioner, her husband and brother-in-law improperly obtained real property belonging to Itera Group by offsetting the purchase price against a nonexistent debt Itera Group allegedly owed Petitioner.  (Doc. 10, pp. 6-7).  Petitioner's defense is that Itera Group owed her $4.8 million in unpaid dividends.  Under Swiss law, offsetting a debt in such a situation is a complete defense to embezzlement.

Specifically, Petitioner claims that in January 2005, the Itera Group Board of Directors approved payment of dividends to its shareholders in the amount of $80 million to be dispersed in two tranches of $40 million each.  (Doc. 37, p.5).  In March 2005, the first payment (or tranche) was made and all shareholders, including Petitioner, received a proportionate share of the dividend based on his/her ownership interest.  Id.  The distribution of the second tranche did not go as smoothly.  According to Petitioner, the Itera Group Board of Directors approved the distribution of the second tranche at the May 28, 2005 meeting.  (Doc. 37, p.6).  However, Petitioner did not receive her full portion of the second tranche.  She received an amount equal to 2.5% ownership in Itera Group rather than the 14.5% ownership she claims she had.  Id.  The unpaid 12% would have been equal to $4.8 million.  (Doc. 37, p.7).  Petitioner claims the Florida Shareholders (the Respondents), on the other hand, received the full amount of their second tranche.  She claims they devised a scheme to avoid taxes on the second tranche whereby Itera Group paid these shareholders their share of the second tranche through a shell company in the form of a loan, rather than as a dividend, which would be taxable.  (Doc. 37, p.6).

On April 30, 2007, Petitioner served the Respondents with her discovery requests.  Petitioner seeks numerous documents which she claims will assist her in both the Switzerland criminal case and the Cypress civil action.  Respondents object to the discovery on numerous grounds.

-4-

## II. ANALYSIS

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court.  See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).  The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party.  See Westrope, 730 F.2d at 731.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result.  See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983 (1958).  Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention.  Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility."  Middle District Discovery (2001) at 1.

In the instant motion, Petitioner served Respondents with eight individual discovery requests seeking various documents which she believes will assist her in both the Swiss and Cypriot actions.  Respondents object that the requests and the definitions accompanying the requests are complicated, "over detailed," ambiguous, overbroad and burdensome.  (Doc. 45, p.9).  The Court will examine each of the requests.

**A.**   <u>**Request No. 1**</u>

This request seeks documents relating to any payment and/or financial transfers made to any of the Respondents by any other Respondent or Itera Group from January 1, 2003 to the present.  (Doc. 2, p.3).  Respondents object to this request on the grounds that it is overly broad, vague, ambiguous, burdensome and oppressive.  (Doc. 45, Ex. B, p.7).  Specifically, Respondents take the position that the request is so vague that complying with it would be "impossibly burdensome and oppressive."  <u>Id.</u> Additionally, Respondents point out that four of them are married to each other and requiring them to disclose information regarding payments or financial transactions between each other would be unduly intrusive and would not lead to admissible evidence.  <u>Id.</u>   Respondents also argue that because they have been employed by one or more Itera Group subsidiaries, they all have so many financial transactions with Itera Group (including wages, bonuses, expense reimbursements and employee benefits), responding to this request would be burdensome.  <u>Id.</u>  Finally, Respondents argue that the time period, January 1, 2003 to the present is too broad because the relevant time period for the Swiss action is May 2005 to March 2006 and for the Cypriot action is February 2006 to March 2006.  (Doc. 45, p.6).

Petitioner responds that with respect to the Swiss action, this request only seeks documents "related to Respondents' receipt of any funds which may have constituted a portion of the Dividend."  (Doc. 46, p.7).  With respect to the Cypriot action, Petitioner claims that this request seeks evidence showing that "Respondents 'borrowed' funds

from Itera Group or from Igor Makarov or some other third party and then immediately transferred the new shares back to Igor Makarov."  Id.

Insofar as this request applies to the Swiss action, the Court believes it may lead to the discovery of admissible evidence.  However, the request as drafted is overly broad.  First, Petitioner herself claims that Respondents received the second tranche either from Itera Group or in the form of a loan from a third party.  There has never been any allegation that one of the Respondents made a payment to another of the Respondents, with the possible exception of Mr. Makarov.[3]  Accordingly, the Court believes the request seeks irrelevant information insofar as it seeks documents regarding payments and financial transfers made to a Respondent from any other Respondent.  Additionally, as Respondents point out, because many of them have at one time been employed by a subsidiary of Itera Group, providing all documents regarding any payment from January 1, 2003 to the present from Itera Group is overly broad.  Petitioner claims she needs documents going back to January 1, 2003 to the present in order to "provide context to each irregular transaction" and "provide concrete evidence that the treatment of Petitioner has been different than the preferential treatment afforded to other shareholders (i.e. the Respondents)."  (Doc. 46, pp. 9-10).

The Court believes requiring the Respondents to provide five years' worth of documents from Itera Group would be overly burdensome and would result in the production of much irrelevant information.  Clearly, Petitioner seeks information

---

[3] Now that Mr. Makarov is no longer a Respondent, the request as currently phrased would not cover him.

regarding whether a second tranche payment was made to any of the Respondents. This payment was to have occurred in June 2005. The Court believes Petitioner may gain sufficient context by obtaining documents one year prior to the alleged tranche payment and one year after. Accordingly, the Court believes a reasonable time period for documents relating to payments, financial transfers, or other benefits conferred upon the Respondents from Itera Group or Mr. Makarov would be from June 1, 2004 to June 30, 2006.

With respect to the Cypriot action, Petitioner claims she needs the requested documents to show that "Respondents 'borrowed' funds from Itera Group or from Igor Makarov or some other third party and then immediately transferred the new shares back to Igor Makarov." (Doc. 46, p.7). Again, this request is overly broad insofar as it seeks documents relating to payments from one Respondent to another Respondent. Additionally, the Court has a similar concern with respect to the time limit of five years. According to the Complaint in the Cypriot case, the actions at issue occurred between May 2005 and February 2006. (Doc. 37, Ex. A). The Court again believes Plaintiff may obtain sufficient context by obtaining documents from the year before and the year after the relevant time period. Therefore, for use in the Cypriot case, the relevant time period should be from May 1, 2004 to February 28, 2007. Accordingly, in response to Request No. 1, Respondents shall produce documents relating to payments, financial transfers, or other benefits conferred upon the Respondents from Itera Group or Mr. Makarov from May 1, 2004 to February 28, 2007.

**B.**   <u>**Request No. 2**</u>

This request seeks documents relating to any communication between any of the Respondents and/or Itera Group relating to payments made to any Respondent from January 1, 2003 to the present.  This request is very similar to Request No. 1 and indeed, during the hearing before the undersigned, counsel for Petitioner indicated that this request was simply a safety net for an attorney that wanted to read loopholes into Request No. 1.  Respondents' objections are the same as with respect to Request No. 1 except that Respondents argue some communications may be protected by the spousal privilege or the attorney-client privilege.  As Petitioner notes, Respondents have failed to provide any support for the conclusory statement that responding to this request would lead to the production of privileged material.  The party asserting a privilege has the burden to show that the privilege applies and that burden "can be met only by an evidentiary showing based on competent evidence, and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" <u>CSX Transp. Inc. V. Admiral Ins. Co.</u>, 1995 WL 855421 *1 (M.D. Fla. 1995) (quoting <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 470 (S.D.N.Y. 1993)).  Here, Respondents do not even refer to any specific documents they claim as being covered by either the spousal or attorney-client privilege.  Instead, Respondents claim that there **may** be such documents.  This is not sufficient and the Court will not prohibit discovery on such an unsubstantiated and speculative argument.

While the Court determined that with respect to Request No. 1, documents regarding payments and financial transfers between the Respondents was not relevant,

the Court believes there may be relevant information regarding communications between the Respondents about payments and financial transfers to any of the Respondents from Itera Group or Makarov.  Accordingly, the Court holds that Respondents shall produce documents relating to any communications between any of the Respondents and/or Itera Group and/or Makarov regarding payments, financial transfers, or other benefits conferred upon the Respondents from Itera Group or Mr. Makarov from May 1, 2004 to February 28, 2007.

**C.    Request No. 3**

This request seeks documents relating to communications between any of the Respondents and Petitioner regarding payments, transfers of funds or other benefits conferred upon any of the Respondents from January 1, 2003 to the present.  Besides their objections that the request is overly broad, vague, ambiguous, burdensome and oppressive, Respondents object to the definition of "Petitioner" contained within the Request for Production.  With regard to Respondents' objections regarding the breadth of this request, the Court agrees the time period is too broad.  Because the Court believes this request seeks documents that could lead to admissible evidence in either the Swiss or Cypriot case, the Court will permit Petitioner to obtain responsive documents from May 1, 2004 to February 28, 2007.

As to Respondents' burdensome/oppressive objection, the Court is not convinced responding to this request (with the new date parameters) will be overly burdensome.  As Petitioner correctly points out, Respondents as the parties resisting discovery, bear the burden of establishing that responding to a discovery request will be

unduly burdensome.  <u>Border Collie Rescue, Inc. v. Ryan</u>, 2005 WL 662724 *2 (M.D. Fla.

2005) (quoting <u>Coker v. Duke & Co.</u>, 177 F.R.D. 682, 686 (M.D. Ala. 1998)).  That

burden cannot be met by a party simply claiming a response would be oppressive or

expensive.  Instead, the party claiming undue burden "'must substantiate that position

with detailed affidavits or other evidence[.]'" <u>Id.</u> (quoting, Coker, 177 F.R.D. at 686 and

citing <u>Hammond v. Lowes Home Ctrs., Inc.</u>, 216 F.R.D. 666, 672 (D. Kan. 2003) ("The

objecting party must show specifically how, despite the broad and liberal construction

afforded the federal discovery rules, [the] question is overly broad, burdensome, or

oppressive by submitting affidavits or offering evidence revealing the nature of the

burden.")).  In the instant case, Respondents have provided no evidentiary support for

their claim that responding to this request would be overly burdensome and their

conclusory statements are insufficient to persuade the Court to limit the request any

more than it already has.

Finally, the Court will turn to Petitioners' objection regarding the definition of

"Petitioner."  In the Request for Production of Documents, "Petitioner" is defined as

Petitioner as well as "all persons, principals, employees, managers officers or directors

of corporations, partnerships or other associations acting as agents for or on behalf of

the Petitioner and all agents, servants and employees."  (Doc. 37, Ex. F, p.7).

Respondents complain that they do not know who Petitioner's agents, servants or

employees are.  (Doc. 45, Ex. B).  In response, Petitioner calls this argument a "red

herring" because "[i]t is not credible that Respondents would not be able to discern

among their personal documents which communications were sent to or received from

Petitioner, her agents, servants, or employee which also relate to funds which passed through Respondents' own hands." (Doc. 46, p.8). The Court notes that Petitioner has not shed any light on who or what may be her agents, servants or employees. Accordingly, to the extent the Respondents can tell whether a communication regarding payments, transfers of funds or other benefits conferred upon any of the Respondents from May 1, 2004 to February 28, 2007 is sent to or from Petitioner or one of Petitioner's agents, servants or employees, Respondents are directed to produce such.

   D.   **Request No. 4**

       This request seeks every document relating to "the Dividend." "The Dividend" is defined as "the $80 million dividend approved by the Itera Group Board of Directors, as alleged in the Petition, regardless of the manner in which the dividend was distributed and/or whether the entire approved dividend was ever fully distributed." (Doc. 37, Ex. F, p.10). Respondents object to this request as being overly broad, burdensome and oppressive. Specifically, Respondents point out that the Swiss case only deals with payment of the second tranche, whereas the definition of "Dividend" clearly covers both the first and second tranche. Petitioner responds that because she "cannot rule out that the Second Tranche may have been distributed to Respondents in conjunction with payment of the First Tranche," this request is reasonable. (Doc. 46, p.8). The Court need not address this argument because Respondents have already been directed to produce any documents regarding financial payments/transfers from either Itera Group or Makarov from May 1, 2004 to February 28, 2007. Obviously, this would cover the

alleged second tranche regardless of whether it occurred at the same time as the first tranche.

Respondents also object to this request on the grounds that it may include their tax returns, "which contain far more information than related to the 'Dividend.'" (Doc. 45, Ex. B, p.7).  The Court addresses the discoverability of Respondents' tax returns in section H below and therefore, will not address it here.

**E.**     **Request No. 5**

This request seeks documents relating to loans made by or between any of the Respondents, Itera Group, SUCO and/or any third party from January 1, 2003 to the present.  Respondents again object that this request is overly broad, burdensome and oppressive.  Specifically, Respondents take issue with the time period and point out that the second tranche was purportedly paid in May 2005 and the alleged authorization of additional shares at issue in the Cypriot case occurred in February 2006.  Additionally, Respondents argue this request is so broad that it would cover documents related to their personal consumer transactions.  Petitioner responds by agreeing to tailor this request to "exclude any consumer transactions Respondents may have conducted with parties totally unrelated to Sweet Water Intervest, Itera Group, SUCO, Igor Makarov, any of the Respondents, or Petitioner."  (Doc. 46, p.9).

The Court agrees that this request is overly broad.  Because this request seeks documents which may be relevant in both the Swiss and Cypriot cases, the Court believes the relevant time period to again be from May 1, 2004 to February 28, 2007. Additionally, the Court believes Petitioner's suggested restrictions are reasonable.

Accordingly, the Court directs Respondents to produce all documents relating to loans made to any of the Respondents by Makarov, Itera Group, SUCO, Sweet Water Intervest and/or Petitioner from May 1, 2004 to February 28, 2007.

## F.    Request No. 6

This request seeks documents relating to the sale, purchase, and/or transfer of Itera Group shares by any of the Respondents, Itera Group, SUCO and/or any other third party from January 1, 2003 to the present.  Respondents again object on the grounds that this request is overly broad, burdensome and oppressive.  Respondents point out that this request only seeks information relevant to the Cypriot case and therefore, the time frame is entirely too broad as the dilution of Petitioner's interest occurred in February 2006.  (Doc. 45, Ex. B, pp. 9-10).  Additionally, Respondents note that Itera Group Ltd. L.L.C. was not incorporated until August 2004.  (Doc. 45, Ex. B, p. 9).  Finally, Respondents argue that:

> [t]he "sale, purchase, and/or transfer of Itera Group shares ..." for the original incorporators (including petitioner, respondents and others) is equally available to Ms. Weber particularly since her husband, Urs Weber, was the legal and financial architect and advisor to the creation of Itera Group and legal and financial advisor to Itera Group until he was discharged in July 2006.

Id.

Petitioner responds that although Itera Group Ltd. was not incorporated until 2004, the Itera Group family of companies has been in existence for many years and that Petitioner has been a shareholder of Itera Group or its predecessor corporation,

Itera Group, NV, since 1995.  (Doc. 46, p.9).  Additionally, Petitioner argues she needs

the documents going back to January 1, 2003 in order to:

> (1) demonstrate the amounts and manner in which previous
> dividends were paid; (2) uncover how and in what pattern
> the amounts of the Dividend or other consideration was
> disbursed to Respondents; (3) prove the manner in which
> the capital increase was funded; and (4) demonstrate why
> the individual shareholders reneged on their offer to
> purchase Petitioner's shares in light of the pressure exerted
> and benefits offered by Itera Group or Igor Makarov.

Id.  Like in the previous requests, Petitioner also argues that allowing her to obtain

documents from the requested time period will provide "context to each irregular

transaction and will provide concrete evidence that the treatment of Petitioner has been

different than the preferential treatment afforded to other shareholders."  Id.

　　　While in her brief Petitioner takes the position that this request seeks documents

regarding the payment of dividends and is therefore relevant to both the Swiss and

Cypriot cases, the Court agrees with Respondents that this request does not seek

information relevant to the Swiss action.  Indeed, at the hearing, counsel for Petitioner

stated that every request except Request 6 sought information regarding the second

tranche.  (Transcript of October 3 hearing, 22:22-24, 23:2-5).  Accordingly, the Court

believes the relevant time period (sufficient to provide Petitioner with some "context")

would be from May 1, 2004 to February 28, 2007.

　　　As for Respondent's argument that Itera Group Ltd. was not formed until August

2004, the Court believes this claim has some merit.  Petitioner responds that she owned

stock in the predecessor corporation, Itera Group NV, however, the Cypriot case deals

with Petitioner's claim that her stock in Itera Group Ltd. was improperly diluted.

Accordingly, the Court will not require Respondents to produce any documents regarding the sale, purchase, and/or transfer of shares other than those of Itera Group Ltd.

Finally, the Court is not persuaded by Respondents' argument that Petitioner has access to this information through her husband.  Perhaps this argument would have more merit had Respondents made a showing that responding to this request would be overly burdensome.  However, Respondents have failed to do so and the Court will require them to produce documents regarding the sale, purchase, and/or transfer of shares of Itera Group Ltd. by any of the Respondents, Itera Group, SUCO and/or any other third party from August 1, 2004 to February 28, 2007.

**G.**    **Request No. 7**

This request asks Respondents to produce documents relating to any agreement, negotiation, or offer to purchase, redeem, trade, transfer, or sell any of Petitioner's shares in Itera Group from January 1, 2003 to the present.  Respondents asserted the same objections as for Request No. 6.  Accordingly, for the same reasons as Request No. 6, the Court directs Respondents to produce documents relating to any agreement, negotiation, or offer to purchase, redeem, trade, transfer, or sell any of Petitioner's shares in Itera Group Ltd. from August 1, 2004 to February 28, 2007.

**H.**    **Request No. 8**

This request seeks documents relating to Respondents' IRS reporting requirements, including returns, worksheets, schedules and other IRS forms, from January 1 2004 to the present.  Respondents object to this request as being "overly

broad, unduly vague, ambiguous, burdensome, oppressive and unduly intrusive into the personal, financial and business affairs" of the Respondents.  (Doc. 45, Ex. B, p. 10).

The Court will first address Respondents' objection that this request is unduly intrusive.  While it appears courts are split as to whether tax returns are entitled to enhanced protection from discovery, this Court has noted that the Eleventh Circuit has not recognized any special privilege for tax returns and therefore, "the discoverability of tax returns has turned on relevance." Shearson Lehman Hutton, Inc. v. Lambros, 135 F.R.D. 195, 198 (M.D. Fla. 1990) (permitting the discovery of defendants' tax returns as they "may lead to admissible evidence concerning the merits of plaintiff's claims," however, limiting use of returns by plaintiff solely in connection with the case and disallowing any dissemination to third parties).

In the instant case, the Court believes the tax returns may produce relevant evidence particularly with respect to the Swiss action (as both parties agree that payment of a dividend is a reportable occurrence).  As the second tranche was allegedly paid in 2005, the Court believes the 2005 tax returns may contain relevant information.  The Court understands Respondents' concern in turning over private financial materials, however, Respondents have not shown that the production of this relevant information would be harmful. Gober v. City of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (holding that the party resisting discovery has the burden to show that the information sought is confidential and that disclosure would be harmful) (citing, Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Const. Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla. 1994)).  Counsel for Petitioner has agreed to receive this

information on an "attorneys eyes only" basis and the Court believes this to be prudent.

Accordingly, the Court will direct Respondents to produce their tax returns for 2005.

Counsel for Petitioner is advised to ensure that only the attorneys representing

Petitioner in the instant matter have access to the tax returns until such time as it is

established they contain relevant information to be utilized in one of the foreign actions.

As for Petitioner's request for the tax returns for 2004 and 2006, the Court is not

certain they will produce relevant information.  The Court is allowing discovery of the

2005 returns because Petitioner has pointed to a reportable event (the payment of the

second tranche).  However, Petitioner has not pointed to any other reportable events

and as such, the Court is inclined to limit discovery to the 2005 tax returns.

Accordingly, and after due consideration, it is

**ORDERED**:

Petitioner's Motion to Compel Discovery (Doc. 2) is **GRANTED in part and

DENIED in part** as set forth in the body of this Order.  Respondents are directed to

produce the information noted in this Order no later than **Thursday, May 1, 2008**.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  15th  day of

April, 2008.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

-18-

Copies to:

Counsel of Record