UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF THE APPLICATION OF
GALINA WEBER,

       Petitioner,

vs.                                   Case No.  3:07-mc-27-J-32MCR

FOR DISCOVERY FROM LAZAR S. FINKER,
an individual, RAISSA M. FRENKEL, an
individual, STEVEN CHARLES KOEGLER, an
individual, WILLIAM E. CHATTIN, an
individual, THEODOROS J. KAVALIEROS, an
individual, AFRODITI KAVALIEROS, an
individual, and IGOR V. MAKAROV, an
individual,

       Respondents.

_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on the March 31, 2009 Order (Doc. 111) in

which Judge Corrigan directed the undersigned to "determine whether the parties have

fully complied with Orders rendered, whether any further production of discovery should

be ordered, and to make a recommendation to [Judge Corrigan] regarding the motion

for sanctions, Doc. 75."

---

[1] Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

## I. BACKGROUND

On April 15, 2008, the undersigned entered an Order granting in part and denying in part Petitioner's Motion to Compel documents from the Respondents. (Doc. 59). Respondents appealed that Order to the District Judge and on May 20, 2008, Judge Corrigan affirmed the Order and directed Respondents to produce the responsive documents by June 5, 2008. (Doc. 65). Respondents then appealed the issue to the Eleventh Circuit and asked that while the appeal was pending, production be stayed. Judge Corrigan ordered Respondents to seek a stay from the Eleventh Circuit and directed that if such a stay was denied, Respondents would be required to produce the responsive documents within five days of notice of the Eleventh Circuit's denial. (Doc. 69).

The Eleventh Circuit denied the stay on August 4, 2008 and on August 18, 2008, Petitioner filed a Motion for Sanctions arguing that Respondents failed to comply with the Court's Order requiring them to produce documents within five days of the Eleventh Circuit's denial of the stay. (Doc. 71). Judge Corrigan denied the Motion on the basis that Respondents stated they would produce the documents within five days of the Eleventh Circuit's denial of their request for a rehearing. (Doc. 74). The Eleventh Circuit denied Respondents' request for reconsideration and on October 14, 2008, Petitioner filed an additional motion for sanctions arguing Respondents again failed to produce the documents as directed by the Court. (Doc. 75).

On October 27, 2008, Judge Corrigan held a show cause hearing in which he discussed whether Respondents had fully complied with their discovery obligations. During the hearing, Judge Corrigan permitted counsel for Petitioner to file a written

memorandum detailing the specific documents Petitioner believed remained to be produced. Petitioner filed this supplemental memorandum on October 31, 2008. (Doc. 83). In the memorandum, Petitioner pointed out that on that same day, Respondents had produced 140 additional pages of documents and counsel had not had an opportunity to review those documents before filing the supplemental memorandum. Id. Respondents filed a response on November 3, 2008 in which they argued they had fully complied. (Doc. 86).

After the Show Cause hearing, Judge Corrigan asked the undersigned to make a determination as to whether Respondents had fully complied with their discovery obligations as set forth in the April 15, 2008 Order. Accordingly, a telephonic hearing was scheduled for November 7, 2008. The Court directed the parties to meet and confer regarding the discovery alleged by Petitioner to remain outstanding. (Doc. 89). Thereafter, Petitioner was directed to file a second supplemental memorandum specifying any documents allegedly remaining to be produced. Id. Petitioner filed the memorandum on November 18, 2008 (Doc. 92) and Respondents filed their response on November 24, 2008 (Doc. 93).

The Court reviewed the memoranda, scheduled an evidentiary hearing, and directed counsel for Respondents to produce the individual with the most knowledge regarding the collection of the documents produced in response to the April 15, 2008 Order. (Doc. 94). The hearing was conducted December 17, 2008 and one of the Respondents, William Chattin, appeared to testify regarding the efforts taken to comply with the Court's April 15, 2008 Order. Thereafter, on December 19, 2008, the undersigned entered an Order (Doc. 98) finding Respondents had complied with the

Court's April 15, 2008 Order but ordering Respondents to have someone examine the main server in order to determine whether any further emails existed, which would be responsive to the April 15, 2008 Order.

Petitioner filed an Objection to that Order (Doc. 101) on January 6, 2009. Respondents filed their Response to the Objection on January 20, 2009 (Doc. 102) and the parties filed a reply (Doc. 107) and sur-reply (Doc. 110) on March 13, 2009 and March 27, 2009 respectively.  On March 31, 2009, Judge Corrigan entered an order directing the undersigned to "determine whether the parties have fully complied with Orders rendered, whether any further production of discovery should be ordered, and to make a recommendation [] regarding the motion for sanctions, Doc. 75."[2]  (Doc. 111).

## II. ANALYSIS

### A.    Whether the parties have fully complied with Orders rendered

On December 19, 2009, the undersigned determined Respondents had fully complied with the April 15, 2008 Order (Doc. 59).  (Doc. 98).  However, despite finding Respondents had fully complied and produced responsive documents, the Court directed Respondents to have someone check Itera's main server to determine if there were any other emails to or from any of the Respondents, which may be responsive to the April 15, 2008 Order.  (Doc. 98, p.5).  Petitioner filed an objection arguing that the undersigned's finding was "clearly erroneous in light of both the testimony and the facts

---

[2]  The undersigned recognizes this determination will require the undersigned to effectively make a recommendation on Petitioner's objections to the Order (Doc. 98) finding Respondents complied with the April 15 Order.  As such, this Report and Recommendation will discharge Petitioner's Objection (Doc. 101).  Obviously, Petitioner will be permitted to file an objection to this Report and Recommendation, which will be addressed by Judge Corrigan.

surrounding this dispute." (Doc. 101, p.6). Additionally, Petitioner took issue with the Court's finding that Respondents were not required to turn over their personal bank statements in light of the fact that they had turned over the wire transfers showing payments they received from Itera. Petitioner argued this finding was "contrary to the law in that a party is not relieved of its burden to produce responsive documents by simply producing other responsive documents - all responsive documents, including those electronically stored, are to be produced." (Doc. 101, pp. 6-7). Finally, in her reply, Petitioner argued the fact that Respondents produced further documents on January 12, 2009 demonstrated the undersigned's error in concluding Respondents had fully complied with the April 15, 2008 Order. (Doc. 107, p.1).

With respect to Petitioner's claim that the undersigned's decision was erroneous in light of the testimony and facts surrounding the dispute, Petitioner claims Respondent Chattin who testified at the evidentiary hearing did not have sufficient knowledge regarding the efforts taken by the other Respondents in gathering responsive documents. The Court agrees Mr. Chattin was not entirely familiar with the steps taken by the other Respondents in gathering responsive emails. As such, during the hearing, the Court inquired of counsel for Respondents about what he knew of the steps taken by the other Respondents to gather responsive emails. Counsel responded he asked each of the Respondents to review their email accounts for responsive materials and he was confident they did so. (Doc. 99, pp.137-139). Additionally, counsel stated that he did not believe he had any obligation to examine Itera's server for responsive emails, but if the Court wanted him to do so, he would. (Doc. 99, pp. 138, 144). Based on this

testimony, as well as Mr. Chattin's prior testimony demonstrating that most of the documents Petitioner alleged Respondents failed to produced had indeed been produced or did not exist, the Court was satisfied the individual Respondents had complied with the April 15, 2008 Order.  However, because of concerns regarding the destruction of Respondent Frenkel's computer and because counsel for Respondents offered, the Court directed Respondents to have someone check the Itera server for responsive emails.  Despite Petitioner's arguments to the contrary, the undersigned does not believe this holding was erroneous.

With respect to Petitioner's claim that the Court should have ordered Respondents to produce their personal bank accounts, the undersigned does not believe such is warranted.  To support her position, Petitioner states, "[i]t is insufficient to merely produce one document reflecting a transaction if other documents exist that reflect the same transaction."  (Doc. 107, p.5).  Petitioner does not cite to any legal authority for this statement.  Respondents explain that the wire transfer confirmation sheets produced to Petitioner "show who wired the money, the amount of money transferred, the account into which the money was wired and the date of the wire transfer."  (Doc. 102, p.6).  Respondents argue that the monthly bank statements "add nothing and contain less information."  Id.  Respondents contend they are simply a summary of account activity, including the wire deposits and at best, "are cumulative." (Doc. 102, p.7).

Again, the undersigned does not believe Respondents are required to produce another document reflecting the amount of the dividend.  The wire transfer confirmation

sheets already produced demonstrate the amount of the dividend paid to each Respondent.  That the bank statements would also reflect this is not a sufficient reason to order production of the bank records.  While technically the Respondents' bank statements would fall within the ambit of the April 15, 2008 Order where the Court directed Respondents to produce "documents relating to payments, financial transfers, or other benefits conferred upon the Respondents from Itera Group or Mr. Makarov from May 1, 2004 to February 28, 2007" (Doc. 59, p.8), the Court does not believe their production is warranted.  Respondents produced the wire transfer confirmation sheets which show payments from Itera Group to the Respondents.  The bank statements may also reflect this payment but would also reveal much other non-relevant information. The undersigned finds the production of the bank statements would simply be cumulative and therefore believes, pursuant to Rule 26(b)(2)(C)(i) of the Federal Rules of Civil Procedure, Respondents should not be required to produce the bank statements.

Finally, Petitioner's argument that Respondents' production of documents on January 12, 2009 demonstrates the undersigned's finding of compliance with the April 15 Order was erroneous is not compelling.  As pointed out earlier, the production of documents on January 12, 2009 by Respondents was simply in response to the Court's requirement that Respondents have someone check Itera's system for any unproduced, relevant emails.  The Court ordered Respondents to do so because counsel for Respondents offered and out of concern regarding the inability to check Ms. Frenkel's computer; not because the April 15, 2008 mandated it.  As such, the further production

of documents on January 12, 2009 does not demonstrate the finding of compliance with the April 15, 2008 Order was erroneous.

### B. Whether any further discovery should be ordered

Judge Corrigan also asked the undersigned to make a determination as to whether any further discovery should be ordered.  Petitioner argues she should be permitted to have her own computer expert examine:

> all computers and Blackberries and other electronic communication devices of the Respondents as well as those of the Jacksonville Itera entities to determine whether there are any emails or other documents or written or electronic communications which may be responsive to the April 15, 2008 Order or if any such responsive documents have been deleted and if so when any such deletion or overwriting occurred.

(Doc. 101, p.7).  Additionally, Petitioner asks that Respondents be ordered to produce banking statements.  As the Court has already addressed Petitioner's request for the banking statements, the Court will turn its attention to Petitioner's request for her computer expert to examine Respondents' and the Jacksonville Itera entities' computers.

Requests for physical inspection of a party's computer hard drive are governed by Rule 34 of the Federal Rules of Civil Procedure, which allows a party to request that another party "produce and permit the requesting party . . . to inspect, copy, test, or sample . . . electronically stored information."  Rule 34 (a)(1)(A), Fed.R.Civ.P.  The advisory committee notes to the 2006 amendment to Rule 34(a) indicate that inspection of a party's hard drive is not routine, but may be permitted in certain circumstances. Similarly, the Eleventh Circuit has determined that in order for a party to be permitted to

-8-

inspect the computer hard drives of another party, the court considering the request

"must make a factual finding of some non-compliance with discovery rules and protect

respondent with respect to preservation of his records, confidentiality of non-

discoverable matters and costs." U & I Corp. v. Advanced Medical Design, Inc., 251

F.R.D. 667, 674 (M.D. Fla. 2008) (citing In re Ford Motor Co., 345 F.3d 1315, 1317 (11th

Cir. 2003)).

   In support of her argument that she should be permitted to examine the computer

hard drives, blackberries and other electronic communication devices of all

Respondents and of all Itera entities in Jacksonville, Petitioner points to the destruction

of Respondent, Raissa Frenkel's personal computer in August 2008.  (Doc. 101, p.2).

Petitioner notes that on June 11, 2008, Judge Corrigan entered an Order granting in

part Respondents' Motion to stay production of the documents.  (Doc. 69).  In that

Order, Judge Corrigan directed Respondents to seek a motion for a stay from the

Eleventh Circuit.  Id.  Respondents were further directed to produce responsive

documents within five days of notice of the Eleventh Circuit's denial of the stay.  Id.

Additionally, the Order specifically directed Respondents "to gather the responsive

documents forthwith so Respondents will be prepared to produce them timely in the

event the Eleventh Circuit denies the stay."  Id.  Petitioner believes the fact that

Respondents did not retrieve emails from Ms. Frenkel's computer prior to its crash in

August 2008 is the sort of behavior warranting an order allowing Petitioner to have an

expert examine Respondents' and Itera's hard drives.  The Court does not agree.

The undersigned is not unsympathetic to counsel for Petitioner's frustration. Obtaining discovery from Respondents has certainly been challenging.  However, the Court does not believe Respondents' conduct has risen to the level of requiring the Court to employ the drastic measure of permitting inspection of Respondents' hard drives.  First, even assuming the destruction of Ms. Frenkel's home computer was an intentional act designed to prevent Petitioner from obtaining requested documents, such would not justify permitting the inspection of the other Respondents' computers or those of the Itera entities in Jacksonville.  Accordingly, making all assumptions in favor of Petitioner, she would have simply provided the Court with an argument for permitting the inspection of Ms. Frenkel's crashed computer's hard drive.  The Court does not believe even that is required under the circumstances present.

As an initial matter, the Court does not have any reason to believe the crash of Ms. Frenkel's computer was anything other than what she claimed it was: a computer crashing.  Even assuming there was some evidence that the computer was deliberately sabotaged, the Court is not convinced there would be responsive documents which would warrant going to the time, effort, and expense of having a computer expert examine the computer.  During the evidentiary hearing, Mr. Chattin testified Ms. Frenkel did not use email except to send out occasional emails notifying others she would be out of town.  Additionally, Ms. Frenkel provided an affidavit stating as a general rule, she did not "use or engage in e-mails" and that her "e-mail account consisted] mostly of incoming material."  (Doc. 101, Ex. A).  Rule 26 of the Federal Rules of Civil Procedure permits the Court to limit discovery in a number of circumstances: if the discovery

sought is unreasonably cumulative or duplicative or is attainable from some other

source that is more convenient or less burdensome; when the party seeking discovery

has had ample opportunity by discovery in the action to obtain the information sought;

or when the balance of burden and expense outweighs the information's likely benefit,

taking into account a number of factors, such as the needs of the case and the

importance of the discovery to the issues at stake in the litigation.  Rule 26(b)(2)(C),

Fed.R.Civ.P.  In the instant case, the undersigned believes it is unlikely any relevant

emails, not already produced by other Respondents, would be located on Ms. Frenkel's

computer after an expensive and intrusive examination by Petitioner's expert.  As such,

the undersigned recommends denial of Petitioner's request for an examination of "all

computers and Blackberries and other electronic communication devices of the

Respondents as well as those of the Jacksonville Itera entities."

      **C.**      **Recommendation regarding sanctions**

Finally, Judge Corrigan asked the undersigned to "make a recommendation []

regarding the motion for sanctions."  (Doc. 111).  In her Renewed Motion for Sanctions

for Failure to Comply with this Court's Discovery Order (Doc. 75), Petitioner requests

each Respondent be:

> individually sanctioned $1,000.00 per day for non-
> compliance with multiple Court's Orders until they have fully
> complied with the Court's Orders, and that Respondents'
> counsel be sanctioned an amount equal to the attorneys'
> fees and costs incurred with filing this Motion.

(Doc. 75, p.2).  Petitioner argues Respondents failed to comply with Judge Corrigan's

June 11, 2008 Order (Doc. 69) directing Respondents to produce responsive

-11-

documents within five days of notice of the Eleventh Circuit's denial of Respondents' motion to stay.  Id.

The history of this litigation provides some context for Petitioner's arguments. Back on October 11, 2007, the undersigned entered a Report and Recommendation finding Petitioner was entitled to seek discovery from Respondents in aid of foreign Proceedings.  (Doc. 38).  Respondents appealed this ruling to Judge Corrigan, who affirmed it.  (Doc. 43).  Respondents then filed an appeal to the Eleventh Circuit.  On April 9, 2008, the Eleventh Circuit dismissed the appeal finding the Order was not appealable as it was not a final order.[3]  (Doc. 58).  On April 15, 2008, the undersigned entered an Order granting in part Petitioner's Motion to Compel and directing Respondents to produce responsive documents no later than May 1, 2008.  (Doc. 59). Respondents objected to that Order and on May 20, 2008, Judge Corrigan overruled the objections, denied Respondents' request for stay pending appeal, and ordered production no later than June 5, 2008.  (Doc. 65).  Respondents filed another motion to stay and this time, Judge Corrigan granted it to the extent he permitted Respondents to seek a stay from the Eleventh Circuit.  (Doc. 69).  The Order specifically informed Respondents that in the event the Eleventh Circuit denied the stay, they were required to produce the documents within five days of the Eleventh's Circuit denial.  Id. Additionally, in bold letters, the Order directed Respondents to "gather the responsive documents forthwith so Respondents will be prepared to produce them timely in the

---

[3] During the October 27, 2008 Show Cause Hearing, Judge Corrigan noted that this appeal by Respondents was his first indication that Respondents "were just not interested in getting an actual resolution of this; they were just interested in not producing these documents."  (Doc. 84, p.20).

event the Eleventh Circuit denies the stay."  Id.  When the Eleventh Circuit denied the stay, rather than produce the documents, Respondents sought a rehearing on the denial of the stay.  Petitioner then filed a motion for sanctions (Doc. 71) and in response, Respondents represented they would produce the documents within five days of denial of their petition for rehearing.  (Doc. 73, p.4).  Accordingly, based on this representation, Judge Corrigan denied the motion for sanctions without prejudice.  (Doc. 74).  The Eleventh Circuit denied the request for rehearing on September 17, 2008.  Therefore, Respondents should have produced the responsive documents on September 22, 2008.  (Doc. 84, p.22).

Instead, on September 30, 2008, Respondents produced some responsive documents.  On October 14, 2008, Petitioner filed a second motion for sanctions arguing Respondents again failed to produce the documents as directed by the Court.  (Doc. 75).  In response, Judge Corrigan issued an Order to Show Cause on October 15, 2008 directing Respondents to appear for a Show Cause Hearing on October 27, 2008.  (Doc. 76).  Respondents produced additional documents to Petitioner on October 22, 2008.  After the Show Cause Hearing, Respondents produced documents again on October 31, 2008 and on December 17, 2008, the day of the evidentiary hearing before the undersigned.  In the Order dated December 19, 2009, the Court directed Respondents to examine the Itera servers to locate any further responsive emails and to produce same no later than January 12, 2009.  Respondents turned over additional documents on January 12, 2009.

During the Show Cause hearing and in response to the Court's Order to Show Cause, counsel for Respondents stated he delayed producing all of the responsive documents for several reasons.  First, counsel explained he received some of the responsive documents via email and he was not able to retrieve them because he could not unlock the security code.  (Doc. 77, p.3).  Additionally, counsel pointed to a criminal trial he was preparing for, which was scheduled to commence on October 6, 2008.  (Doc. 77, pp. 3, 4).  Finally, counsel stated that once he learned the Eleventh Circuit scheduled the appeal in this matter for oral argument, he was concerned that final production would moot the appeal.  (Doc. 77, p.4).  Counsel for Respondents took the position that "[a]ny fault is that of the undersigned and he bears responsibility."  (Doc. 77, p.5).

If a party disobeys an order requiring production of documents, the Court may enter such orders as are just, including the sanctions enumerated in Rule 37(b)(2).  Rule 37(b)(2) authorizes sanctions against a party for non-compliance with a court order, "notwithstanding a lack of wilfulness or bad faith, although such factors are relevant to the sanctions imposed."  U & I Corp., 251 F.R.D. at 674 (citing In re Seroquel Products, Liability Litigation, 244 F.R.D. 650, 656 (M.D. Fla. 2007)).  For purposes of Rule 37, an incomplete response is treated as a failure to respond.  Rule 37(a)(3), Fed.R.Civ.P.

Pursuant to Rule 37(b)(2)(C), the Court is obligated to sanction a party/attorney who fails to obey an order to provide discovery "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(b)(2)(C),

Fed.R.Civ.P.  The Rule provides that the disobedient party/attorney shall be required to pay the reasonable expenses, including the attorney's fees caused by the failure.  Id. Rule 37 sanctions operate to prevent unfair prejudice to the litigants as well as to "insure the integrity of the discovery process."  Id. (citing Aztec Steel Co. v. Fla. Steel Corp., 691 F.2d 480, 482 (11th Cir. 1982)).  "The most severe spectrum of sanctions must be available to district courts not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  Id. (citing National Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778 (1976)).

In the present case, it is clear Respondents failed to comply with the Court's June 11, 2008 Order (Doc. 69) requiring Respondents to produce documents within five days of the Eleventh Circuit's denial of their motion to stay.  Moreover, Respondents failed to comply with the provision in that Order directing that documents be compiled "forthwith" so that they could be produced in a timely fashion.  (Doc. 69, p.2).  Not only did Respondents fail to produce the documents in a timely fashion, but it is clear they were not in the process of compiling documents after June 11, 2008 as Judge Corrigan directed.  Had they been compiling documents, any responsive documents from Ms. Frenkel's computer would have been able to be produced.  Moreover, counsel for Respondents would not have had a problem with opening the emails in September. Additionally, the undersigned believes the "integrity of the discovery process" requires the imposition of sanctions.  Respondents' conduct throughout the litigation of this case reveals their attempt to avoid producing responsive documents at any cost.  From filing

-15-

appeals to non-appealable orders to disregarding orders of this Court, Respondents have demonstrated a disregard for the discovery process.

As it is clear Respondents disobeyed an Order of this Court, the undersigned must next determine whether Respondents have shown their failure was substantially justified or other circumstances make an award of expenses unjust. The undersigned does not believe Respondents have made such a showing. As Judge Corrigan noted during the Show Cause Hearing, the behavior of Respondents throughout this litigation is that of "people who just don't want to produce documents, no matter what." (Doc. 84, p.19). Respondents' excuses for failing to produce the documents in a timely fashion: the inability to unlock documents sent via email and preparation for a lengthy criminal trial, would have been more compelling absent the history of the case. In light of the Respondents' obvious reluctance to produce documents and willingness to go to great lengths to avoid doing so, the undersigned finds their failure to comply with directives to produce the responsive documents was not substantially justified. Additionally, Respondents have not pointed to any other circumstances which would make an award of expenses unjust. As counsel for Respondents contends any noncompliance was solely his fault, the Court recommends the imposition of sanctions against counsel for Respondents in the amount of Petitioner's expenses, including reasonable attorneys' fees, incurred in filing the motions for sanctions, attending the show cause hearing and preparing for and attending the evidentiary hearing on December 17, 2008.

**III.  CONCLUSION**

In sum, the undersigned finds that at this time, Respondents have fully complied with Orders rendered, no further production of discovery should be ordered, and sanctions against counsel for Respondents are appropriate.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  9th  day of June, 2009.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Hon. Timothy C. Corrigan,
  U.S. District Judge